

AO 241

FILED

DEC 27 2022

BONNIE HACKLER
Clerk, U.S. District Court

_____
Deputy Clerk

PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District: **Eastern** |
|---|---|
| Name (under which you were convicted):<br><br>Michael D. Magness | Case No.:<br>**22 CIV 376 JFH** |
| Place of Confinement:<br>Joseph Harp Correctional Center,<br>Lexington, OK | Prisoner No.:<br><br>765965 |
| Petitioner:<br>Michael D. Magness         v. | Respondent:<br>Luke Pettigrew,<br>JHCC Warden |
| The Attorney General of the State of: **Oklahoma** ||

## PETITION

1.  (a) Name and location of court that entered the judgment of conviction you are challenging: Okfuskee County District Court

    309 N 5th St

    Okemah, OK 74859

    (b) Criminal Case Number: CF-2015-59

2.  (a) Date of the Judgement of Conviction: 12/15/2018

    (b) Date of Sentencing: 12/05/2018

3.  Length of Sentence: Ct.1 – Life w/o Parole, Ct.2 – 10 Years, Ct.3 – 3 Years, Ct.4 - 10 Years

4.  In this case, were you convicted on more than one count or of more than one crime? **Yes**

5.  Identify all crimes of which you were convicted and sentenced in this case: Ct.1 – First Degree Murder, Ct.2 – Second Degree Arson, Ct.3 - False Claim of Insurance, Ct.4 – Possession of Child Pornography

6.  (a) What was your plea? **Not Guilty**

    (b) If you entered a guilty plea to one count or charge and a

not guilty plea to another count or charge, what did you plead
guilty to and what did you plead not guilty to?

    Ct.1 -  Not Guilty

    Ct.2 -  Nolo Contendre

    Ct.3 -  Nolo Contendre

    Ct.4 -  Guilty

(c) If you went to trial, what kind of trial did you have?
**Jury**

7.    Did you testify at a pretrial hearing, trial, or a post-trial
hearing? **No**

8.    Did you appeal from the judgment of conviction? **Yes**

9.    If you did appeal, answer the following:

(a) Name of Court: Oklahoma Court of Criminal Appeals

(b) Case Number: F-2018-1250

(c) Result: Conviction Affirmed

(d) Date of Result: 4/15/2022

(e) Citation to the Case: N/A

(f) Grounds Raised:

    1 - Insufficiency Of Evidence

    2 - Abuse of Judicial Discretion

    3 - Error in Jury Instructions

(g) Did you seek further review by a higher state court? **No**

(h) Did you file a petition for certiorari in the United
States Supreme Court? **No**

10.    Other than the direct appeals listed above, have you
previously filed any other petitions, applications, or motions
concerning this judgment of conviction in any state court? **Yes**

11.    If your answer to Question 10 was "Yes," give the following
information:

(a)   (1) Name of Court: Okfuskee County District Court

       (2) Case Number: CF-2015-59

(3) Date of Filing: 6/28/2022

(4) Nature of the Proceeding: Post-Conviction Relief

(5) Grounds Raised:

    1 - Insufficiency of Evidence

    2 - Prosecutorial Misconduct

    3 - Abuse of Judicial Discretion

    4 – Jurisdiction

    5 - Cruel and Unusual Punishment

    6 - Ineffective Assistance of Trial Counsel

    7 - Ineffective Assistance of Appellate Counsel

    8 - Cumulative Error

(6) Did you receive a hearing where evidence was given on your petition, application, or motion? **No**

(7) Result: **Denial**

(8) Date of Result: **12/13/2022**

(b) If you filed any second petition, application, or motion, give the same information: **N/A**

(c) If you filed any third petition, application, or motion, give the same information: **N/A**

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion? **Yes**

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**GROUND ONE:** Insufficiency of Evidence

(a) Supporting Facts: State failed to provide a sufficiency of evidence to convict Petitioner of First Degree Murder. Only by adding layer upon layer of inference could any reasonable Jury

come to a finding of guilt, and by so doing, the Prosecution denied Petitioner the Constitutional Rights of Due Process, Equal Protection, and a Fair Trial.

The State failed to present a single piece of non-circumstantial evidence, focused their argument upon the mere possibility of guilt, and required the jury to rely upon layer after layer of inference to reach their guilty verdict as evidenced by their closing arguments.

While circumstantial evidence is certainly valid and may be used to weigh other evidence or help determine the validity of testimony, it becomes unreasonable when there is no other supporting evidence and inferences must be made to support additional inferences which in turn generate still further inferences.

Firstly, there is the issue of Alibi. Petitioner presented an alibi defense, which places the burden of proof upon the State to disprove said alibi. The alibi witnesses' initial testimony was that due to a number of factors there was "no way" Petitioner could have left their home unnoticed on the night in question. It wasn't until the prosecution intentionally misled said witnesses [as detailed in Ground Two] with the falsehood that there was video evidence of Petitioner outside of their home on the night in question that the witnesses' testimony changed. Even so, their testimony only changed to admitting it was "possible" in light of the falsified video evidence. In an effort to place Petitioner at the scene, the State solicited testimony of a "kind of bald", "kind of pudgy", "not skinny and not fat", man "maybe" 5'6" or 5'7" or possibly the Petitioner's 5'10" (at the prosecutors prompting) who weighed "maybe 240, 250" (as opposed to the Petitioner's nearly 300), and wearing "jeans [and] a white

shirt" (as opposed to the Petitioner's black sweatpants and dark brown shirt). Additionally, the car the man was driving was described as a four-door sedan which was "either dark navy blue or black" (as opposed to the Petitioner's forest green car which at the time was covered in light brown mud from country roads). Further, the man in question simply walked toward the crime scene from the next street over and was not identified as actually entering the property let alone the house itself. Next, the State claimed this man was the murderer by inferring that he was seen a little after 01:30, and then what "sounded like a gunshot" was heard at around 02:00, even though the witness originally described the sound as coming from the opposite direction of the crime scene. The State also had to surmount the issue of boot prints in the backyard which did not match the Petitioner. Their claim was that the Petitioner could have used boots belonging to one of the teenagers living at the alibi's house although the boots in question did not actually match the prints left behind.

   Secondly, there is the issue of the guns and ammo which were stolen at the time of the murder, indicating a burglary gone wrong. The State claims that Petitioner staged the burglary with conflicting claims that Petitioner dumped the stolen guns in a public location less than a mile from the Alibi's home (supposedly out of desperation on the night in question) and that Petitioner dumped them there in advance. The latter certainly isn't plausible given the alibi location and the many other options Petitioner would have had, and the former is likewise unlikely. However, both have the issue of the river having been in flood at the time of the murder and the fact that the case was found two weeks later in a back current that could not have existed more than a few days prior

to discovery (two weeks after the murder). A trier of fact would have to make the irrational inference that Petitioner placed the gun case in this public location, less than a mile from Petitioner's alibi, two weeks after the murder.

   The State went on to falsely claim multiple times throughout the trial that the murder weapon was positively identified as belonging to Petitioner, despite the State's forensics expert clearly stating that the murder bullet could not be matched to Petitioner's stolen gun. However, a casing found near the body (in a home where many such casings were found throughout the dwelling due to Petitioner's habit of saving casings for reloading) did match Petitioner's stolen gun although no link between it and the killing round could be established.

In Summary:

   Inference 1) Possibility Petitioner could have slipped out of and back into Alibi's home completely unnoticed by two adults, three teenagers, and four children.

   Inference 2) Possibility Petitioner was the bald, pudgy man seen on the next street over with apparently different clothes and a different car.

   Inference 3) Possibility said man entered the crime scene adjacent to his apparent path.

   Inference 4) Possibility the alleged gun shot heard from the opposite direction was actually an echo of murdering shot.

   Inference 5) Possibility Petitioner used ill-fitting, borrowed boots to lay a false trail, despite said boots not matching the prints left behind.

   Inference 6) Possibility spent casing (in a house full of spent casings) found near body was the murder casing.

   Inference 7) Possibility Petitioner staged the burglary.

Inference 8) Possibility Petitioner intentionally placed gun case less than a mile from his alibi's home in a public location two weeks after the murder.

Petitioner believes that upon de novo review this Court will find A) the jury had to compound a multitude of such inferences, each upon the other, in order to reach their guilty verdict, B) that such inferences contained a high degree of doubt, C) that the State intentionally misled the jury to these false conclusions despite well-established case law against such practices, and D) this directly resulted in the denial of Petitioner's right to due process.

(b) If you did not exhaust your state remedies for this Ground, explain why: **N/A**

(c) **Direct Appeal of Ground One:**

>    (1) If you appealed from the judgment of conviction, did
>        you raise this issue? **Yes**

>    (2) If you did not raise this issue in your direct
>        appeal, explain why: **N/A**

(d) **Post-Conviction Proceedings:**

>    (1) Did you raise this issue through a post-conviction
>        motion or petition for habeas corpus in a state trial
>        court? **Yes**

>    (2) If your answer to Question (d)(1) is "Yes," state:

Type of Motion or Petition: Post-Conviction

Name and Location of the Court: Okfuskee County District
                                                 309 N 5th St
                                                 Okemah, OK 74859

Case Number: CF-2015-59

Date of the Court's Decision: 10/5/2022

Result: **Denial,** See Attached Copy of Court's Order

(3) Did you receive a hearing on your motion or petition?

**No**

(4) Did you appeal from the denial of your motion or
petition? **Yes**

(5) If your answer to Question (d)(4) is "Yes," did you
raise this issue in the appeal? **Yes**

(6) If your answer to Question (d)(4) is "Yes," state:

Name and Location of the Court:

    Oklahoma Court of Criminal Appeals

    Oklahoma Judicial Center, Ste. 4

    2100 N. Lincoln Blvd.

    Oklahoma City, OK 73105-4907

Case Number: **PC-2022-967**

Date of the Court's Decision: **12/13/2022**

Result: **Affirmed**

(7) If your answer to Question (d)(4) or Question (d)(5)
is "No," explain why you did not raise this issue:
**N/A**

(e) **Other Remedies:** Describe any other procedures (such as
habeas corpus, administrative remedies, etc.) that you
have used to exhaust your state remedies on Ground One:
**N/A**

**GROUND TWO:** Pre-Trial Prosecutorial Witness Tampering

(a) Supporting Facts: The State purposefully deceived
Petitioner's Alibi Witnesses with the express intent of
altering said Witnesses' testimony, resulting in the
Witnesses' trial testimony being fundamentally altered from
all previous statements. Thus, Petitioner was denied his
Constitutional Rights of Due Process, Equal Protection, and a
Fair Trial.

    Mr. Crouch and his wife had from the beginning testified to
investigators that the Petitioner could not have left the

Crouch residence on the night in question and maintained these statements well past the point Petitioner was arrested and charged (without physical evidence, or a reversal of said alibi). However, in an effort to tamper with their testimony just prior to the preliminary hearing, the original prosecutor, Maxey Reilly, purposefully deceived Mr. Crouch by telling him there was video evidence of the Petitioner in Okemah, away from the Crouch residence, on the night in question and that Petitioner had taken out a life insurance policy on Mr. Crouch implying the threat of violence should Petitioner not be imprisoned. During the trial, the fact of these deceptions was solicited by defense counsel and under oath confirmed as having been enough to turn "friend against friend". However, as this was an act committed pre-trial, defense was unable (or ineffective enough) to raise an objection.

As lead prosecutor, Mrs. Reilly knew full well that no video of Petitioner outside of the Crouch residence on the night in question existed within evidence. She also knew there was no such life insurance policy on Mr. Crouch by Petitioner. However, she also knew that without a change in the Crouchs' testimony, the State's case would fail.

Mrs. Reilly's action was prejudicial in every respect; it took from Petitioner his most solid defense. Both Mr. and Mrs. Crouch had been steadfast that it wasn't possible for Petitioner to have left from and/or returned to their residence unnoticed (for a multitude of reasons including their bedroom door being open and adjacent to the room where Petitioner was sleeping, their bedroom window being open and facing the area where Petitioner's car was parked, the newly weened child waking everyone up regularly, etc...). However,

well after the investigation had concluded and both parties
were preparing for trial, Mrs. Reilly's fabrications placed
both an "irrefutable" doubt and a "substantial fear" into Mr.
and Mrs. Crouch's minds causing them to doubt their own memory
and modify their testimony to include a possibility that
Petitioner could have left their residence. Mr. Crouch in
particular comes from a law enforcement background and knows
that while an investigator may lie during the course of an
investigation, a Prosecutor may not, and so would have been
all the more susceptible to this falsehood. Prior to the above
tampering, Petitioner could have, and did, relied upon these
alibis to prove his innocence; however, that ability was
denied and the State was allowed to generate numerous
inferences (as described in Proposition One) that misled the
jury and resulted in Petitioner's false conviction.

(b) If you did not exhaust your state remedies for this
Ground, explain why: **N/A**

(c) **Direct Appeal of Ground Two:**

> (1) If you appealed from the judgment of conviction, did
> you raise this issue? **No**

> (2) If you did not raise this issue in your direct
> appeal, explain why: Ineffectiveness of Appellate
> Counsel as outlined in Ground Eight

(d) **Post-Conviction Proceedings:**

> (1) Did you raise this issue through a post-conviction
> motion or petition for habeas corpus in a state trial
> court? **Yes**

> (2) If your answer to Question (d)(1) is "Yes," state:
> Type of Motion or Petition: Post-Conviction
> Name and Location of the Court: Okfuskee County District
> 309 N 5th St

                                          Okemah, OK 74859

Case Number: CF-2015-59

Date of the Court's Decision: 10/5/2022

Result: **Denial,** See Attached Copy of Court's Order

(3) Did you receive a hearing on your motion or petition?
    **No**

(4) Did you appeal from the denial of your motion or
    petition? **Yes**

(5) If your answer to Question (d)(4) is "Yes," did you
    raise this issue in the appeal? **Yes**

(6) If your answer to Question (d)(4) is "Yes," state:

Name and Location of the Court:

        Oklahoma Court of Criminal Appeals

        Oklahoma Judicial Center, Ste. 4

        2100 N. Lincoln Blvd.

        Oklahoma City, OK 73105-4907

Case Number: **PC-2022-967**

Date of the Court's Decision: **12/13/2022**

Result: **Affirmed**

(7) If your answer to Question (d)(4) or Question (d)(5)
    is "No," explain why you did not raise this issue:
    **N/A**

(e) **Other Remedies:** Describe any other procedures (such as
    habeas corpus, administrative remedies, etc.) that you
    have used to exhaust your state remedies on Ground Two:
    **N/A**

**GROUND THREE:** Prosecutorial Misconduct

(a) Supporting Facts: The State tried a case full of
misconducts in an attempt to achieve a "victory" in spite of
knowing the evidence did not support their theory and well
established case law. Petitioner is sure he has been unable to

detail all instances, and relies upon this Court's de novo review to see any additional errors not detailed below, but has made a good faith effort to outline as many as possible.

The Prosecution made several statements of alleged "fact" throughout the trial (and particularly during closing arguments) which were often knowingly false, but even when other circumstantial evidence may have supported their claims, they took from the jury the power to decide by repeatedly presenting the State's theory as proven fact. The State 1) explicitly stated that the murder weapon was proven to belong to the Petitioner even though their own forensic expert stated no match could be made; 2) introduced a multitude of "bad acts" (as better outlined in Ground Four) as well as solicited testimony of Petitioner's skill as a LARPer in an effort to convict upon Petitioner's alleged character rather than evidence; 3) intentionally misquoted timelines; 4) knowingly lied about Petitioner not showing emotion while they intentionally edited around such displays in evidence provided to the jury; 5) repeatedly solicited non-experts for opinions which they knew a true expert (often other State witnesses which were called) would refute; 6) knowingly misled the Trial Court by A) claiming solicitation of a minor is "not a crime" (in order to meet the Court's "Burk's" standard, admission of bad acts) and B) claiming having grown up in Okemah precludes Petitioner having grown up as a nudist (in another effort to admit character evidence); 7) knowingly solicited false, and/or contradictory information about A) Petitioner's gun being positively identified as the murder weapon, B) alleged inconsistencies in Petitioner's statements, and C) Petitioner's financial status; 8) purposefully solicited a long series of conclusive statements from Agent Titsworth (the

lead investigator) in which he repeatedly and directly states
Petitioner was guilty, many times doing so after defense
objection had been sustained, and going so far that even the
otherwise biased [Petitioner's Belief] Trial Court verbally
reprimanded the State and threatened mistrial; 9) knowingly
submitted a falsified Miranda document (while Petitioner does
not make any Miranda claim, he does point out that his arrest
was well documented as occurring on May 1", 2015, while the
document submitted was labeled as May 5th, 2015, and is
indicative of the State's overall efforts to achieve victory
no matter the facts); and 10) knowingly concealed Medical
Examiner's opinion of the timing for Victim's eye to have been
bulged and that said timing was even an issue of importance
for the State's case, making it impossible for the defense to
offer explanation or counter testimony.

    Throughout closing arguments the State provided a litany of
plain error, prejudicial statements such as 1) "you know
that's not who Michael Magness is", 2) "you know that Michael
Magness is someone who murdered his wife", 3) "it does factor
into your decision as to why Mr. Magness would do what he
did", 4) "the reason Mr. Magness did what he did", 5) "and
will agree and know with confidence beyond a reasonable doubt
that the murder was caused by this defendant", 6) "in this
case the evidence takes you directly to Michael Magness", 7)
"after he shot her in the face", 8) "and shoot her in the
face", 9) "He's surprised because he killed her, ladies and
gentlemen.", 10) "he shot her in the face" , and 11) "and it
was Michael Magness who shot his wife with malice aforethought
in the face".

    The State also misrepresented, contradicted, and/or plainly
lied about additional testimony such as 1) fabricating

contradictions between Petitioner's and Mr. Lyons' statements; 2) adding their own non-expert testimony about the dog being in its crate; 3) giving their own non-expert (and incorrect) testimony about cell towers not being able to show travel off a single text, knowing full well there were multiple pings throughout the time in question that did show "travel" as having been static at the Crouch residence and going further to tell the jury to disregard it anyway because the data wasn't "helpful in the case"; 4) adding the testimony "Unfortunately, there's a lot of brush and debris for Mr. Magness so that Glock case, I'm sure he thought would float down the river, got hung up there." even though both Mr. York senior and Mr. York junior testified for the State that the case was freely floating in a back current (not caught in any brush), and no other testimony would suggest otherwise; 5) giving their own non-expert (and incorrect) testimony about guns not rusting while in water; 6) claiming the victim "was also a disabled person who was having some problems and suffering in her home. And it was that disability that kept her trapped in this marriage with Mr. Magness". No other testimony suggested Beth was "disabled" by her depression, nor was there any other testimony to suggest either of us wished to end our marriage; 7) bolstering Agent Titsworth's testimony above even the State's own expert witnesses; 8) claiming that there was no reason for the Crouchs to have changed their testimony despite Mr. Crouch's testimony of Mrs. Reilly's tampering; 9) misrepresenting DNA evidence; 10) directly lying about Petitioner's weight, which was in the 290 - 310 range at the time of the murder; 11) directly lying about Petitioner being denied for a bridge loan (the record shows Petitioner had been approved, but was holding off while shopping for

better rates); 12) lying about Petitioner's loans from his mother and Mr. Rich having been both for the funeral (the loan from Rich was for the funeral, the loan from Petitioner's mother was for the restaurant); and 13) attributing multiple quotes as having been directly from Petitioner even though Petitioner never took the stand.

When looking at the prosecutors' statements, it is clear that the State decided it was the finder of fact, rather than the jury, and so directed the jury in what to think. With the bombardment of false information made by the State, the jury was hard pressed to remember what was actually presented as evidence and testified to during the course of the seven-day trial, and with this constant barrage of twisted "facts" reiterated to them by the State throughout the closing statements, it is little wonder that otherwise rational triers of fact would come to a false conclusion of guilt. There were few objections made by defense counsel during the closing arguments. However, Petitioner is confident that under de novo review this Court will find the errors plain and with obviously substantial negative impact upon both the trial proceedings and the integrity of the judicial process, all of which ultimately resulted in the denial of substantial rights and a clear prejudice against the Petitioner.

(b) If you did not exhaust your state remedies for this Ground, explain why: **N/A**

(c) **Direct Appeal of Ground Three:**

> (1) If you appealed from the judgment of conviction, did you raise this issue? **No**

> (2) If you did not raise this issue in your direct appeal, explain why: Ineffectiveness of Appellate Counsel as outlined in  Ground Eight

(d) **Post-Conviction Proceedings:**

   (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court? **Yes**

   (2) If your answer to Question (d)(1) is "Yes," state:

   Type of Motion or Petition: Post-Conviction

   Name and Location of the Court: Okfuskee County District

   309 N 5th St

   Okemah, OK 74859

   Case Number: CF-2015-59

   Date of the Court's Decision: 10/5/2022

   Result: **Denial,** See Attached Copy of Court's Order

   (3) Did you receive a hearing on your motion or petition? **No**

   (4) Did you appeal from the denial of your motion or petition? **Yes**

   (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? **Yes**

   (6) If your answer to Question (d)(4) is "Yes," state:

   Name and Location of the Court:

   Oklahoma Court of Criminal Appeals

   Oklahoma Judicial Center, Ste. 4

   2100 N. Lincoln Blvd.

   Oklahoma City, OK 73105-4907

   Case Number: **PC-2022-967**

   Date of the Court's Decision: **12/13/2022**

   Result: **Affirmed**

   (7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: **N/A**

(e) **Other Remedies:** Describe any other procedures (such as

habeas corpus, administrative remedies, etc.) that you
have used to exhaust your state remedies on Ground Three:
N/A

**GROUND FOUR:** Abuse of Judicial Discretion

(a) Supporting Facts: The Trial Court repeatedly abused their
Judicial Discretion in favor of the State by the admission of
improper evidence, directly prejudicing the defense via facial
expression and comments, and failure to properly instruct the
jury.

Throughout the trial and pre-trial proceedings, the Trial
Court showed clear bias towards the State through his rulings,
inattention, facial expressions, and failure to follow
standard, or even his own, procedures. Under de novo review,
this Court will find a clear pattern of abuse focused upon
creating prejudice both for the State and against the
Petitioner.

Petitioner's primary complaint revolves around the Trial
Court's "Burks" rulings which allowed the State to introduce a
multitude of "bad acts" and other character flaws, which were
greatly more prejudicial than probative. The Trial Court also
exhibited either a misunderstanding or blatant disregard of
Burks throughout their rulings, beginning with the ruling that
any "bad act" could be brought up so long as certain "terms of
art" were not used. However, even that overly permissive
ruling was disregarded, and the trial was allowed to become
one of character assassination rather than legal fact. The
Trial Court allowed testimony of alleged adultery, and while
the State may have had an argument for motive, it was
presented as a general "he's not a faithful husband" rather
than a direct motive. Further, the Trial Court used its own
"forbidden word" of adultery when addressing the jury, over

defense's objection. The Trial Court allowed testimony of arson for an incident which had previously been investigated and no evidence of foul play found. While the State argued for motive, it was improper to allow this "trial within a trial" to take place. The Trial Court allowed testimony of an alleged improper relationship with a minor which again entailed a "trial within the trial" and served only to prejudice the jury. Further, the Trial Court ruled in part upon the State's misinformation that proposition of a minor was "not a crime" and went on to even deny the reading of instructions to the jury over defense objection. The Trial Court allowed testimony of Petitioner's child getting into medication, which resulted in an overdose requiring medical attention, an incident which was investigated and ruled an accident (Petitioner wasn't even home at the time, Petitioner's wife was with the child), but which was presented as proof of "bad parenting" and had absolutely no bearing on the murder case. The Trial Court allowed testimony of poor farm management, which again went only to "bad person".

Secondly, the Trial Court showed a clear bias in favor of the State in their objection rulings and prejudiced the jury with their procedural failures and body language. There were a multitude of discovery violations which defense counsel repeatedly raised and carefully explained, citing case law, which were still overruled. This allowed the State to spring previously unknown, and unknowable, testimony at trial without the defense being able to effectively respond. The Trial Court overruled objections to several clear cases of speculation (some of which the witness even said they "could only guess"), which again allowed the State to introduce testimony to which defense counsel could not effectively respond and that the

State later quoted as fact to the jury. Defense counsel
remarked in the record on the Trial Court's facial expressions
and general demeanor, which clearly indicated a bias and
frustration against the defense, to which the Trial Court
replied with hostility and refused to change. Additionally,
there is a string of individual occurrences which, when viewed
as a whole, show an overall pattern. Trial Court 1) fails to
give formal jury instruction on the first day; 2) reverses
their previous ruling about providing documents to witnesses
in favor of the State, while continuing to hold defense to the
stricter ruling; 3) allows description of putting down farm
animals; 4) fails to instruct jury to disregard after
sustaining defense objection; 5) overrules relevance objection
to "eggs benedict" testimony; 6) allows a book on consensual
bondage techniques to be provided to the jury and included in
evidence, even though it is never offered or entered into
evidence, and whose sole purpose is that of character
assassination (the State never even tries to justify); 7)
allows multiple, graphic images of the victim, over defense
objections and case law citation; 8) during a bench conference
called in response to defense objection, instructs the State
to repeat the objected to question in front of the jury rather
than in the bench conference and allows the witness to answer
before sustaining the objection, then instructs the jury to
disregard with a belligerent tone, showing clear anger with
the defense; 9) grants an exception for the State to solicit
testimony regarding Petitioner's invocation of his right to
counsel; 10) confirms previous ruling (#9 above) and adds
permission to solicit testimony about Petitioner's invocation
of his right to remain silent; 11) fails to instruct jury to
disregard after sustaining multiple defense objections, even

after being forced to reprimand the State and threatening a
mistrial, which showed his clear understanding of the severity
of the misconducts; 12) declares an arbitrary (very short)
time limit on closing arguments, which greatly favors the
State; 13) overrules a multitude of defense objections to
burden shifting during State's closing argument with clear
belligerence; 14) not reflected in the record, but witnessed
by many, Trial Court was seen by jury members in the hallway
commiserating and shaking hands with the victim's father, both
giving that witness greater credibility and showing which
"side" the Trial Court was on.

Thirdly, Petitioner feels there was a clear pattern of
confusion and inattention, which may have been indicative of
Trial Court's unfitness to duty. Petitioner understands the
gravity of the following accusation; however, it is
Petitioner's belief (according to common discussion and
knowledge among jail and court staff at the time of trial,
which Petitioner heard directly) that the Trial Court was
taking pain killers throughout the trial which seriously
impaired their ability. Medical records will show the Trial
Court was experiencing severe back pain and was prescribed
pain killers at the time of the trial. Further, Petitioner
believes pharmacy records will show Trial Court's rate of
consumption based upon fill dates. While it is difficult to
tell tone from the plain text of a transcript, in each of the
following the Trial Court had either a confused or distracted
tone and/or demeanor as indicated 1) states they are confused
[TR V1-P207-L12]; 2) shows confusion about the State's duty of
continuing disclosure of discovery [TR V2-P195-L12]; 3) fails
to notice State's objection [TR V4-P27-L21]; 4) several
instances of clearly not knowing what was going on and in

general seeming "out of it" [TR V4-P49 to V4-P52]; 5) unaware
proposition of a minor was a crime [TR V4- P101-L11]; 6)
confused by what testimony had just been given [TR V4-P121-
L2]; 7) seems confused that conspiracy to arson could be
considered a crime [TR V4-P121-L2]; 8) is confused by the
simple request for a bathroom break [TR V4-P132-L8]; 9) again
shows a lack of attention to the proceedings [TR V6-P203 to
V6-P206].

Finally, the Trial Court was the same District Court which
heard Petitioner's Application for Post-Conviction Relief and
despite a direct conflict of interest (as outlined in Ground
Nine) refused to recuse themselves both violating Oklahoma law
regarding recusal and rendering the decision on Petitioner's
Application for Post-Conviction Relief impossibly biased as
the very Court which stood accused of abusing their discretion
ruled on said abuse. While Petitioner feels this argument is
plainly of merit, even if found otherwise the Court standing
in judgement of itself shatters any hope for the appearance of
impartiality or fairness.

While individual lapses may be explained as harmless error,
the frequency and persistence of the Trial Court's actions
show a clear design which worked to undermine Petitioner's
rights and create a substantial bias against the defense.
(b) If you did not exhaust your state remedies for this
Ground, explain why: **N/A**
(c) **Direct Appeal of Ground Four:**
    (1) If you appealed from the judgment of conviction, did
        you raise this issue? **Yes**
    (2) If you did not raise this issue in your direct
        appeal, explain why: **N/A**
(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court? **Yes**

(2) If your answer to Question (d)(1) is "Yes," state:

Type of Motion or Petition: Post-Conviction

Name and Location of the Court: Okfuskee County District

           309 N 5th St

           Okemah, OK 74859

Case Number: CF-2015-59

Date of the Court's Decision: 10/5/2022

Result: **Denial,** See Attached Copy of Court's Order

(3) Did you receive a hearing on your motion or petition? **No**

(4) Did you appeal from the denial of your motion or petition? **Yes**

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? **Yes**

(6) If your answer to Question (d)(4) is "Yes," state:

Name and Location of the Court:

   Oklahoma Court of Criminal Appeals

   Oklahoma Judicial Center, Ste. 4

   2100 N. Lincoln Blvd.

   Oklahoma City, OK 73105-4907

Case Number: **PC-2022-967**

Date of the Court's Decision: **12/13/2022**

Result: **Affirmed**

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: **N/A**

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Four:
N/A

**GROUND FIVE:** Jurisdiction

(a) Supporting Facts: The State of Oklahoma lacked subject matter jurisdiction to charge, try, or convict Petitioner of the crime of first degree murder, which was alleged to have occurred within the boundaries of the Muskogee/Creek Nation. Thus, Petitioner was denied the Constitutional Rights of Due Process and Equal Protection.

Petitioner is aware of the recent SCOTUS ruling regarding non-native petitioners; however, he wishes to preserve following argument for the record in the event the current ruling is overturned.

The OCCA has held that subject matter jurisdiction cannot be conferred by consent, nor can it be waived, and it may be raised at any time. While the Respondent will most likely cite *Matloff v Wallace, Matloff* is not pertinent, as Petitioner is not claiming that *McGirt v Oklahoma* is retroactive. In fact, the 10th Circuit Court of Appeals held on September 18, 2020, that *McGirt* is not a new rule of constitutional law, but is based on decades old decisions

Any State District Court in Indian Territory or the Unassigned Lands are deprived of subject matter jurisdiction to hear any criminal claim, because the State of Oklahoma ceded jurisdiction to the United States upon entry into the Union. The Oklahoma Constitution reads in part:

The people inhabiting the State do agree and declare that they Forever disclaim all right and title in or to any unappropriated public lands lying within the boundaries thereof, and to all lands lying within said limits owned or held by any Indians, Tribe, or Nation;

and that until the title to any such public land shall
have been extinguished but the United State, the same
shall be and remain subject to the jurisdiction,
disposal, and control of the United States.

By a plain language reading of the above, the United States
reserved federal jurisdiction upon the admission of Oklahoma
into the Union, and Oklahoma explicitly disclaimed said same
jurisdiction over any criminal offenses. Additionally,
Congress has never passed a law conferring jurisdiction to
Oklahoma. Absent an Act of Congress relinquishing Federal
jurisdiction, the State cannot simply assume subject matter
jurisdiction.

In addition to the lack of Federal compliance, Oklahoma has
not obtained Tribal consent following the 1968 amendment and
has thus again failed to acquire jurisdiction over Tribal land
through P.L. 280. SCOTUS, before establishment of the State of
Oklahoma which, held that the Legislature wields significant
constitutional authority when it comes to Tribal relations,
possessing even the authority to breach its own promises and
treaties. However, SCOTUS also cautioned that said power
resides with the Federal Congress alone. Under the U.S.
Constitution, States have no authority to reduce Federal
reservations lying within their borders. History shows that
Congress can, and does, withdraw such reservations when they
wish, and that disestablishment requires clearly expressed
intent to do so.

To the best of his knowledge, neither the Petitioner nor
his alleged victim are of Indian descent. However, Race (i.e.
Indian status) is not the issue at bar, but jurisdiction as a
whole. For the Court to uphold Equal Protection, it cannot
discriminate upon the basis of Race, and just as with other

Federal jurisdictions (i.e. military reserves and bases,
national parks, etc...) subject matter jurisdiction remains
with the Federal government, not the State in which the
Federal lands resides.

(b) If you did not exhaust your state remedies for this
Ground, explain why: **N/A**

(c) **Direct Appeal of Ground Five:**

    (1) If you appealed from the judgment of conviction, did
        you raise this issue? **No**

    (2) If you did not raise this issue in your direct
        appeal, explain why: Ineffectiveness of Appellate
        Counsel as outlined in  Ground Eight

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction
        motion or petition for habeas corpus in a state trial
        court? **Yes**

    (2) If your answer to Question (d)(1) is "Yes," state:
    Type of Motion or Petition: Post-Conviction
    Name and Location of the Court: Okfuskee County District
                            309 N 5th St
                            Okemah, OK 74859

    Case Number: CF-2015-59
    Date of the Court's Decision: **10/5/2022**
    Result: **Denial,** See Attached Copy of Court's Order

    (3) Did you receive a hearing on your motion or petition?
        **No**

    (4) Did you appeal from the denial of your motion or
        petition? **Yes**

    (5) If your answer to Question (d)(4) is "Yes," did you
        raise this issue in the appeal? **Yes**

    (6) If your answer to Question (d)(4) is "Yes," state:

Name and Location of the Court:

    Oklahoma Court of Criminal Appeals

    Oklahoma Judicial Center, Ste. 4

    2100 N. Lincoln Blvd.

    Oklahoma City, OK 73105-4907

Case Number: **PC-2022-967**

Date of the Court's Decision: **12/13/2022**

Result: **Affirmed**

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: **N/A**

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Five: **N/A**

**GROUND SIX:** Cruel and Unusual Punishment / Equal Protection

(a) Supporting Facts: The State of Oklahoma violated Petitioner's Right to Protection from Cruel and Unusual Punishment under the United States Constitution by imposing a sentence of Life Without the Possibility of Parole; which in modern times has been found both cruel and unusual by multiple Nations and the international community at large. Further, the State failed to provide Equal Protection to Petitioner by denying him access to the resources available to any other Citizen facing a Death sentence.

Petitioner is aware this claim would be setting new precedent; however, just as death by hanging was once considered just punishment, Petitioner believes it is time for the sentence of Life without the Possibility of Parole (LWOP) to be viewed under a more modern lens as the "death sentence executed by time", which it is.

SCOTUS, has stated "Punishments are cruel when they involve torture or a *lingering death*...", obviously implying the existence of punishment more egregious than the conventional death penalty. Considering the fact that no inmate sentenced to life in prison is guaranteed parole, the punishment of LWOP is unnecessarily severe in view of the purposes for which it was imposed. The State loses nothing by either doing away with LWOP or requiring at Least one aggravating circumstance before sentencing a human being to this "Walking Death Sentence".

The questions then are 1) whether the deliberate infliction of an unending sentence, to those who may be capable of rehabilitation, is today consistent with the command of the Cruel and Unusual Punishment clause of the 8th Amendment of the US Constitution, that the State may not inflict punishments that do not comport with human dignity; 2) if Oklahoma juries should be better informed as to the severity of the sentence they are asked to impose; and 3) whether the State should grant equal protection to those facing LWOP as to those facing any other death sentence. The only explanation for the uniqueness of sentences such as Death and LWOP is their extreme severity. While upon first glance it may seem that LWOP is a lesser punishment than Death, there is considerable modern science to suggest it is in fact a greater punishment. Courts have long held that mental/emotional pain must be considered to be an inseparable part of the practice of punishing criminals and that, for death sentences, the prospect of waiting around to die exerts a great toll during the inevitably long wait between imposition and the actual welcoming of death. However, a conventional sentence of Death does at least have a known end. For those with LWOP, there is no end in sight, and the anguish of the "long wait" is

perpetual. According to modern psychology, this anguish is as intense, if not more so, as that suffered by those condemned to die by conventional execution, but without end. In fact, the onset of insanity and self-destructive tendencies among those sentenced to LWOP are similar to those sentenced to execution.

LWOP deems rehabilitation impossible, just as any other death sentence does; the only real difference between the two is the manner of death, direct-action execution or time. To condemn a human being to such a sentence without a single aggravating circumstance, or any other evidence of an irredeemable nature, certainly meets the standards of Cruel and Unusual. While the issue of the death sentence is still hotly debated, it has long been established that when the State seeks such an extreme punishment, the accused is afforded every protection of the law, and special diligence is given to their trial to ensure the State does not commit a grievous and irreversible wrong. However, the State does not afford any such protection to those for whom they seek LWOP, which, when combined with the AEDPA and Oklahoma's new restraints on Post-Conviction relief, means that after a single year these individuals have no possibility of anything less than death in prison for the rest of their natural lives. Prior to the AEDPA or Oklahoma's new Post-Conviction limitations, a person with LWOP could always strive to prove their innocence, and a wrongfully convicted person would always have the hope that they would be heard. That is no longer the case, and so, after an all too short time limit has run out, they are hopelessly condemned to Death by Time.

Petitioner's case is an excellent example of this type of injustice. Had Petitioner been afforded the extra diligence of

a Capital crime defense team, the atrocities of the
prosecutorial misconducts and abuse of judicial discretion, as
outlined in previous grounds, may have been averted. If not,
then a Capital crime appellate team would almost certainly
have noticed them and filed a diligent direct appeal, and
absent direct appeal relief, would have aided Petitioner's
Habeas efforts. As it happened though, with the unprecedented
delays of Covid related prison lockdowns and the severe
depression Petitioner struggled with throughout the first
years of incarceration (as is common to many falsely
imprisoned), Petitioner had no such protections and very
nearly missed his opportunity to file this Habeas Petition,
which would have resulted in an innocent man being forever
sentenced to Life Without the Possibility of Justice.

(b) If you did not exhaust your state remedies for this
Ground, explain why: **N/A**

(c) **Direct Appeal of Ground Six:**

> (1) If you appealed from the judgment of conviction, did
> you raise this issue? **No**

> (2) If you did not raise this issue in your direct
> appeal, explain why: Ineffectiveness of Appellate
> Counsel as outlined in  Ground Eight

(d) **Post-Conviction Proceedings:**

> (1) Did you raise this issue through a post-conviction
> motion or petition for habeas corpus in a state trial
> court? **Yes**

> (2) If your answer to Question (d)(1) is "Yes," state:
> Type of Motion or Petition: Post-Conviction
> Name and Location of the Court: Okfuskee County District
> > 309 N 5th St
> > Okemah, OK 74859

Case Number: CF-2015-59

Date of the Court's Decision: 10/5/2022

Result: **Denial,** See Attached Copy of Court's Order

(3) Did you receive a hearing on your motion or petition?
     **No**

(4) Did you appeal from the denial of your motion or
     petition? **Yes**

(5) If your answer to Question (d)(4) is "Yes," did you
     raise this issue in the appeal? **Yes**

(6) If your answer to Question (d)(4) is "Yes," state:

Name and Location of the Court:

     Oklahoma Court of Criminal Appeals

     Oklahoma Judicial Center, Ste. 4

     2100 N. Lincoln Blvd.

     Oklahoma City, OK 73105-4907

Case Number: **PC-2022-967**

Date of the Court's Decision: **12/13/2022**

Result: **Affirmed**

(7) If your answer to Question (d)(4) or Question (d)(5)
     is "No," explain why you did not raise this issue:
     **N/A**

(e) **Other Remedies:** Describe any other procedures (such as
    habeas corpus, administrative remedies, etc.) that you
    have used to exhaust your state remedies on Ground Six:
    **N/A**

**GROUND SEVEN:** Ineffective Assistance of Trial Counsel

(a) Supporting Facts: Petitioner was denied the Right to
Effective Assistance of Trial Counsel due to the Attorney's
deficient performance, the Trial Court's rulings, and the
State's discovery violations which led to prejudice against
Petitioner.

While the Petitioner's trial counsel certainly made a
valiant effort despite the hurdles in their path, they none-
the-less ultimately failed in this respect. Defense counsel 1)
mentioned calling upon State witnesses as part of opening
statements, yet completely failed to issue subpoenas to any of
these State witnesses, which directly resulted in the loss of
critical expert testimony (most notably the loss of expert
testimony which would have proven Petitioner's cell phone was
nowhere near the crime scene); 2) knew that the original times
and statements of Petitioner's alibi witnesses excluded
Petitioner from suspicion but had changed (in response to the
issues noted in Ground Two) and explicitly attempted to
solicit these original time statements, yet failed to have
these documents at hand during questioning, further, they
failed to ask for a mistrial after soliciting explicit
testimony of witness tampering by the State (as outlined in
Ground Two); 3) agreed that the issue of the boot prints were
important and solicited detailed testimony in an attempt to
show that the boots being described did not match the prints
at the scene; however, despite Petitioner's requests, failed
to even attempt to procure the physical boots for evidence
when they were readily available; 4) was aware that the timing
of Mrs. Hill's testimony was important to the State's case
and, despite Petitioner's requests, failed to even attempt to
procure casino surveillance which would have given the exact
time Mrs. Hill could have seen the "bald, pudgy man"; 5)
admitted to the importance of Petitioner's Gmail messages to
the victim on the morning after, which showed attempts to
check in (and language clearly indicating affection), but
failed to admit it into evidence; 6) failed to submit email
evidence (after agreeing it was of value to the impeachment of

Ms. Simmons) between Beth Magness and several friends, which clearly prove Ms. Simmons' testimony to be a fabrication, even though they were readily available; 7) failed to object to evidence of alleged bank fraud as well as to include the same in prior Burks hearings; 8) failed to subpoena the life insurance agent to testify that he had not acted on Petitioner's behalf, after Petitioner provided contact information and urged them to do so; 9) failed to solicit critical testimony about the gun case's inability to have been where it was found for more than a few days, despite clearly understanding the importance of said testimony; 10) failed to object to the admittance of a book on consensual bondage techniques and failed to object that it was admitted without ever being offered or officially entered into evidence; 11) failed to object to the alternate ME's testimony of the bulging eye, despite discussing the fact that an alternate ME is required to base opinion upon the original report and A) we do not know from the report that the eye was ever bulged and could not cross-examine the alternate on this fact, and B) we were not given discovery of this opinion to provide our own expert testimony which would have refuted the "only minutes from death" opinion which was clearly a major point of the State's theory; 12) failed to solicit testimony about the angle of the fatal shot and relative heights despite multiple conversations with the Petitioner about the importance of said testimony; 13) stopped objecting to a variety of issues due to the Trial Court's chilling effect (as outlined in Ground Four), even though they objected to other similar occurrences and so knew that they should have to preserve the record; 14) failed to object to a multitude of misconducts during State's closing arguments (as outlined in Ground Three); 15) failed to

deliver an explanation of the "eye bulge" issue during closing arguments, which both counsels and the Petitioner discussed and agreed was vitally important. In fact, Petitioner only agreed to forego taking the stand on Counsel's promise to address this issue in closing.

Upon de novo review, Petitioner is certain this Court will notice many additional failings which Petitioner has missed, but, after due diligence, these are the instances Petitioner has noticed and feels are indicative of ineffectiveness. Additionally, while a few of the above issues may be explainable as trial "strategy", Petitioner has only listed those instances where he feels the issue was a result of inability, forgetfulness, or a general "lack of time" of counsel rather than a legal tactic. While the State did provide an additional counsel to assist in Petitioner's defense at trial, it is important to note that the primary counselor's case load was so extreme throughout the pretrial process as to deny the possibility of effective assistance, and the secondary counselor's lack of time to familiarize himself with the case did the same. While it may weaken Petitioner's position on this Ground, I feel it is important to state that Trial Counsel did seem to be working hard and to the best of their ability; however, circumstances beyond their control culminated in the failings above which none-the-less resulted in ineffectiveness and a denial of Petitioner's rights.

(b) If you did not exhaust your state remedies for this Ground, explain why: **N/A**

(c) **Direct Appeal of Ground Seven:**

>     (1) If you appealed from the judgment of conviction, did
>         you raise this issue? **No**

      (2) If you did not raise this issue in your direct
          appeal, explain why: Ineffectiveness of Appellate
          Counsel as outlined in  Ground Eight

**(d) Post-Conviction Proceedings:**

      (1) Did you raise this issue through a post-conviction
          motion or petition for habeas corpus in a state trial
          court? **Yes**

      (2) If your answer to Question (d)(1) is "Yes," state:

      Type of Motion or Petition: Post-Conviction

      Name and Location of the Court: Okfuskee County District

                                       309 N 5th St

                                       Okemah, OK 74859

      Case Number: CF-2015-59

      Date of the Court's Decision: 10/5/2022

      Result: **Denial,** See Attached Copy of Court's Order

      (3) Did you receive a hearing on your motion or petition?
          **No**

      (4) Did you appeal from the denial of your motion or
          petition? **Yes**

      (5) If your answer to Question (d)(4) is "Yes," did you
          raise this issue in the appeal? **Yes**

      (6) If your answer to Question (d)(4) is "Yes," state:

      Name and Location of the Court:

          Oklahoma Court of Criminal Appeals

          Oklahoma Judicial Center, Ste. 4

          2100 N. Lincoln Blvd.

          Oklahoma City, OK 73105-4907

      Case Number: **PC-2022-967**

      Date of the Court's Decision: **12/13/2022**

      Result: **Affirmed**

      (7) If your answer to Question (d)(4) or Question (d)(5)

is "No," explain why you did not raise this issue:
**N/A**

(e) **Other Remedies:** Describe any other procedures (such as
habeas corpus, administrative remedies, etc.) that you
have used to exhaust your state remedies on Ground Seven:
**N/A**

**GROUND EIGHT:** Ineffective Assistance of Appellate Counsel

(a) Supporting Facts: Petitioner was denied the Right to
Effective Assistance of Appellate Counsel due to the
Attorney's failure to perform reasonable diligence to discover
error, which caused major deficiencies in Petitioner's ability
to seek Appellate Relief.

Appellate counsel did not 1) adequately raise the issue of
insufficiency of evidence as outlined in Ground One; 2) raise
the issue of Mrs. Reilly's misconduct as outlined in Ground
Two; 3) raise the issue of the Trial Prosecutor's misconducts
as outlined in Ground Three; 4) fully raise the issue of Trial
Court's abuse of discretion (nothing beyond a few of the
Burk's issues) as outlined in Ground Four; 5) raise the issue
of jurisdiction as outlined in Ground Five; 6) raise the issue
of overall cumulative error as outlined in Ground Ten
(Petitioner does not complain of Appellate Counsel's failure
to claim ineffective assistance of Trial Counsel, as that
would be improper for direct appeal, but the errors outlined
in Ground 7 themselves should have gone to the issue of
cumulative error). While Petitioner feels all of the above
errors are of merit, Grounds 2, 3, 4, and 9 are plainly of
merit, and Ground 1 was plainly incorrectly argued on Direct.
The untrained, *pro se,* Petitioner, points to his discovery of
the above as evidence of a complete lack of diligence on the
part of the professionally trained appellate attorney.

Additionally, after meeting with the Petitioner in person and making a good initial showing of effort, it quickly became apparent appellate counsel was leaving OIDS (had found employment elsewhere) and "wrapping up" her current case load as quickly as possible. While appellate counsel did meet with the Petitioner on a number of occasions while awaiting the Trial Court's completion of record, they met only once to discuss Petitioner's actual issues and utterly failed to actually review the case in full or to consider the objections above, which Petitioner sees as plainly evident and whose lack in the direct appeal caused significant prejudice. The direct appeal itself was submitted without Petitioner's full input or approval, and while this is not a requirement by statute, Petitioner had requested to take as active roll a roll as possible and was denied.

(b) If you did not exhaust your state remedies for this Ground, explain why: **N/A**

(c) **Direct Appeal of Ground Eight:**

    (1) If you appealed from the judgment of conviction, did you raise this issue? **No**

    (2) If you did not raise this issue in your direct appeal, explain why: As this is an issue with the appellate counsel, the issue could not have been raised until Post-Conviction.

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court? **Yes**

    (2) If your answer to Question (d)(1) is "Yes," state:

Type of Motion or Petition: Post-Conviction

Name and Location of the Court: Okfuskee County District

309 N 5th St

Okemah, OK 74859

Case Number: CF-2015-59

Date of the Court's Decision: 10/5/2022

Result: **Denial,** See Attached Copy of Court's Order

(3) Did you receive a hearing on your motion or petition?
**No**

(4) Did you appeal from the denial of your motion or
petition? **Yes**

(5) If your answer to Question (d)(4) is "Yes," did you
raise this issue in the appeal? **Yes**

(6) If your answer to Question (d)(4) is "Yes," state:

Name and Location of the Court:

Oklahoma Court of Criminal Appeals

Oklahoma Judicial Center, Ste. 4

2100 N. Lincoln Blvd.

Oklahoma City, OK 73105-4907

Case Number: **PC-2022-967**

Date of the Court's Decision: **12/13/2022**

Result: **Affirmed**

(7) If your answer to Question (d)(4) or Question (d)(5)
is "No," explain why you did not raise this issue:
**N/A**

(e) **Other Remedies:** Describe any other procedures (such as
habeas corpus, administrative remedies, etc.) that you
have used to exhaust your state remedies on Ground Eight:
**N/A**

**GROUND NINE:** Post-Conviction Proceedings

(a) Supporting Facts: Petitioner's rights to Due Process,
Equal Protection, and Fair Trial were denied through the
State's failure to follow Oklahoma statute and established

procedure.

   The State of Oklahoma has a clear and well-defined process
for Post-Conviction Relief codified in both statute and case
law. The District Court (which was the same as the Trial
Court) failed to follow this process by 1) refusing to recuse
themselves from a proceeding which directly called into
question their own actions; 2) relying on personal knowledge
of the original trial rather than the evidence and testimony
entered into the record of the post-conviction proceeding; 3)
taking a directly adversarial roll by making arguments for the
State (the District Attorney entered no Response); 4) failing
to conduct *Logan* tests on the issues raised as evidence of
ineffective assistance of appellate counsel; and 5) failing to
conduct evidentiary hearings on issues of material fact.

   These issues were all raised in the subsequent appeal to
the Oklahoma Court of Criminal Appeals (OCCA); however, the
OCCA failed to remand and affirmed the District Court's
decision despite the failings listed above. By not following
state statue and the *Logan* procedure, both the District Court
and the OCCA denied Petitioner his rights.

(b) If you did not exhaust your state remedies for this
Ground, explain why: **N/A**

(c) **Direct Appeal of Ground Nine:**

    (1) If you appealed from the judgment of conviction, did
        you raise this issue? **No**

    (2) If you did not raise this issue in your direct
        appeal, explain why: Ground arose during post-
        conviction proceedings.

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction
        motion or petition for habeas corpus in a state trial

court? **No**

(2) If your answer to Question (d)(1) is "Yes," state:

Type of Motion or Petition: **N/A**

Name and Location of the Court: **N/A**

Case Number: **N/A**

Date of the Court's Decision: **N/A**

Result: **N/A**

(3) Did you receive a hearing on your motion or petition? **N/A**

(4) Did you appeal from the denial of your motion or petition? **N/A**

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? **N/A**

(6) If your answer to Question (d)(4) is "Yes," state:

Name and Location of the Court: **N/A**

Case Number: **N/A**

Date of the Court's Decision: **N/A**

Result: **N/A**

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

As the issue is with the Post-Conviction proceedings themselves, there is no further recourse at the State level.

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Nine: **N/A**

**GROUND TEN:** Cumulative Error

(a) Supporting Facts: Petitioner's rights to Due Process, Equal Protection, and Fair Trial were denied through the cumulative effect of multiple errors, which when viewed

collectively created a clear prejudice.

Even if all of the above grounds were to be individually found as harmless, their affects must still be considered as a whole and weighed against the interest of justice, which at its core demands a fair trial with integrity and due process.

Plaintiff's claim is one of actual innocence. I loved my wife (still do) and had absolutely nothing to do with her murder. I have been unjustly accused of this crime, prosecuted by a close-knit, small town court system and will spend the rest of my life in prison while the real murderer walks free. While I ultimately seek dismissal, at the end of the day, all I really need is a fair trial to prove my innocence.

(b) If you did not exhaust your state remedies for this Ground, explain why: **N/A**

(c) **Direct Appeal of Ground Ten:**

>    (1) If you appealed from the judgment of conviction, did you raise this issue? **No**
>
>    (2) If you did not raise this issue in your direct appeal, explain why: Ineffectiveness of Appellate Counsel as outlined in  Ground Eight

(d) **Post-Conviction Proceedings:**

>    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court? **Yes**
>
>    (2) If your answer to Question (d)(1) is "Yes," state:
>    Type of Motion or Petition: Post-Conviction
>    Name and Location of the Court: Okfuskee County District
>
>                                        309 N 5th St
>
>                                        Okemah, OK 74859

Case Number: CF-2015-59

Date of the Court's Decision: 10/5/2022

Result: **Denial,** See Attached Copy of Court's Order

(3) Did you receive a hearing on your motion or petition?
**No**

(4) Did you appeal from the denial of your motion or
petition? **Yes**

(5) If your answer to Question (d)(4) is "Yes," did you
raise this issue in the appeal? **Yes**

(6) If your answer to Question (d)(4) is "Yes," state:

Name and Location of the Court:

> Oklahoma Court of Criminal Appeals
>
> Oklahoma Judicial Center, Ste. 4
>
> 2100 N. Lincoln Blvd.
>
> Oklahoma City, OK 73105-4907

Case Number: **PC-2022-967**

Date of the Court's Decision: **12/13/2022**

Result: **Affirmed**

(7) If your answer to Question (d)(4) or Question (d)(5)
is "No," explain why you did not raise this issue:
**N/A**

(e) **Other Remedies:** Describe any other procedures (such as
habeas corpus, administrative remedies, etc.) that you
have used to exhaust your state remedies on Ground Ten:
**N/A**

13.  Please answer these additional questions about the petition
you are filing:

(a) Have all grounds for relief that you have raised in this
petition been presented to the highest state court having
jurisdiction? **Yes**

(b) Is there any ground in this petition that has not been
presented in some state or federal court? **No**

14.   Have you previously filed any type of petition, application,
      or motion in a federal court regarding the conviction that you
      challenge in this petition? **No**

15.   Do you have any petition or appeal now pending in any court,
      either state or federal, for the judgment you are challenging?
      **No**

16.   Give the name and address, if you know, of each attorney who
      represented you in the following stages of the judgment you
      are challenging:
      (a) At preliminary hearing: Curt Allen, OIDS
                                        206 S. Grand Ave. #100
                                        Okmulgee, OK 74447
      (b) At arraignment and plea: Same As Above
      (c) At trial: Same As Above
      (d) At sentencing: Same As Above
      (e) On appeal: Maria Kolar, OIDS
                        PO Box 926
                        Norman, OK 73073
      (f) In any post-conviction proceeding: Pro Se
      (g) On appeal from any ruling against you in a post-conviction
      proceeding: Pro Se

17.   Do you have any future sentence to serve after you complete
      the sentence for the judgment that you are challenging? **No**

18.   TIMELINESS OF PETITION: If your judgment of conviction became
      final over one year ago, you must explain why the one-year
      statute of limitations as contained in 28 U.S.C. § 2244(d)
      does not bar your petition:
      Date of Final Judgement - 4/15/2021, 90 Day Certiorari Period
          Tolls from 4/15/2021 to 7/14/2021
          (365 Days Remain)
      Post-Conviction Proceedings Filed on 6/28/2022, Begins Tolling

(16 Days Remain)

Post-Conviction Final Judgement - 12/13/2022, Ends Tolling

(16 Days Remain)

Habeas Petition Mailed via Prison Legal Mail System -

12/19/2022, Begins Tolling 10 Days Remain)

Therefore, petitioner asks that the Court grant the following relief: Overturn with prejudice or reverse and remand to the district court for evidentiary hearing plus other relief to which petitioner may be entitled.

I declare under penalty of perjury that the foregoing document is true and correct to the best of my belief and understanding. Additionally, this Petition for Writ of Habeas Corpus was executed and placed in the prison mailing system on 12/19/2022.

Michael Magness, 765965                        12/19/22

Michael Magness, 765965                        Date
JHCC, C-1-213
PO Box 548
Lexington, OK 73051